Matthew R. Howell (6571)
FILLMORE SPENCER, LLC
3301 North University Avenue
Provo, Utah  84604
Telephone No. (801) 426-8200
mhowell@fslaw.com

Attorneys for Knoll, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KNOLL, INC., <br><br> Plaintiff, <br><br> v. <br><br> MODERNO, INC. and URBAN MOD, INC. DBA REGENCY SHOP, and MIKE SAXENA, <br><br> Defendants. | KNOLL, INC.'S MEMORANDUM IN OPPOSITION TO MOVANT'S MOTION TO QUASH <br><br> Civil No. 2:12 mc 816-DB <br><br> (Action currently pending in Southern District of New York – Case No. 11 CV 0488) <br><br> Judge Dee V. Benson |

Respondent Knoll, Inc. ("Knoll") respectfully submits this Memorandum of Law in Opposition to the motion by Defendants Moderno, Inc., Urban Mod, Inc. and Mike Saxena (collectively, "Defendants") to quash the subpoena served by Knoll on Authorize.net

## FACTUAL BACKGROUND

**The New York Litigation**

In 2011 Knoll sued Defendants in the Southern District of New York for infringement of its federally registered trademarks for the configuration of four pieces of furniture designed by the architect Ludwig Mies Van der Rohe: the Barcelona Chair (Reg. No. 2,893,025); the Barcelona Stool (Reg. No. 2,894,977); the Barcelona Couch (Reg. No. 2,894,980); and the Barcelona Table (Reg. No. 2,894,979), as well as for infringement of the BARCELONA mark (Reg. No. 772,313).[1]

On July 30, 2012 Judge Hellerstein of the Southern District of New York issued an order requiring Defendants to produce to Knoll "a sworn statement providing (a) the name and the address of the processing company requested by Mr. Gottlieb [Knoll's counsel], (b) the name of the persons within that company with whom defendants communicated, and (c) copies of all pages and documents, including e-mails, received from, or sent to, that company." A copy of the order is attached as Exhibit A. Knoll sought this order from the New York Court because documents produced by Defendants purporting to show their sales of infringing items conflict and appear to be incomplete; as it explained to the Court, Knoll required the identity of the entities used by Defendants as payment processors so it could subpoena Defendants' sales records and be sure that it has a complete accounting of Defendants' sales of the infringing products.

On August 2, 2012, Defendants provided an affidavit of Mr. Mike Saxena, principal of Defendants, identifying Authorize.net as Defendants' payment processor. Accordingly, Knoll issued a subpoena to Authorize.net on August 9, 2012. The

---

[1]*Knoll, Inc. v. Moderno, Inc.*, et al., 11 CV 0488.

subpoena was sent to a process server by Federal Express on August 10, but the process server apparently never received the package.  Knoll provided notice of the subpoena to Defendants, as required by Fed. R. Civ. P. 45 (b)(1), on August 10.  Knoll learned on August 30 that the process server had not received the subpoena and, therefore, had not served it.  Knoll promptly forwarded the process server a new subpoena,[2] which was personally served on Authorize.net on August 30, 2012.  A copy of the return of service is attached to this memorandum as Exhibit B.[3]

**The Subpoena to Authorize.net**

The subpoena to Authorize.net, who is not a party to the New York Litigation, seeks production of the following documents:

1. Documents reflecting Defendants' sales of the infringing items (which Defendants call "Ibiza"); and

2. Communications between Authorize.net and Defendants relating to (a) the infringing items and (b) the New York Litigation.[4]

To insure that it received all relevant documents, Knoll identified Defendants' infringing items by name and by what it understood to be Defendants' style numbers.  The style numbers were derived from documents produced by Defendants.  Knoll reasonably relied on those documents because they were prepared by Defendants[5] and

---

[2]The new subpoena is the same as the subpoena attached to the motion filed by Defendants except that the new subpoena is dated August 30 and specifies September 10, 2012 as the date for compliance

[3]Knoll advised Defendants' counsel of the service of the new subpoena by e-mail on August 31, 2012, which included a copy of the new subpoena.

[4]Knoll is not seeking all electronic communications between Defendants and third parties.  By this subpoena Knoll only seeks communications between Authorize.net and Defendants.

[5]Ideally Knoll would identify by Bates number the documents from which it obtained the style numbers.  However, since June 2012 Defendants have not produced any documents with Bates numbers and have refused Knoll's repeated requests to do so because, in their view, there is no agreement to do so among the parties.  If necessary, Knoll will present these documents to the court at an appropriate hearing.  Knoll has Bates numbered the documents it has produced to Defendants.

Defendants have steadfastly refused to provide information regarding items not at issue—Defendants have refused to produce copies of individual invoices to their customers.  Defendants' style numbers do not appear on their website, so Knoll had no way of verifying the accuracy of the information provided by Defendants.  Defendants now claim that style numbers LFS 807 W, LFS 649 BL, LFS 631 B and LFS 649 R do not identify any of the infringing items, but neglect to state what items those numbers identify.

## ARGUMENT

**I.     Knoll Has Not Previously Received the Information It Seeks**

In their motion papers, Defendants concede that there are sales that remain unreported to Knoll.  (Memo at unnumbered page 7).  Since Defendants have conceded that their production of sales information is not complete, Knoll is entitled to seek complete information from Authorize.net via this subpoena, particularly in view of the New York Court's order.  Furthermore, due to the inconsistencies in sales reports provided by Defendants (all of which Knoll understands were prepared by Defendants), Knoll is entitled to the production of documents showing Defendants' sales of infringing products and underlying the reports produced by Defendants so that it can verify the accuracy of reports Defendants prepared instead of producing the information Knoll seeks via the subpoena.

Defendants also claim that they "have already produced to Plaintiff all communications between Defendants and Authorize.net regarding the New York case, and obtaining sales documents regarding the furniture from Authorize.net, aside from communication regarding this subpoena." (Memo at unnumbered page 8).  Defendants

have not identified when they made such disclosure to Knoll and cannot identify which documents contained that disclosure because, since June 2012, they have not Bates numbered any documents that they have produced to Knoll.  Moreover, to the extent that Defendants have produced communications with Authorize.net, Knoll is entitled to seek those communications from Authorize.net to confirm that Defendants' production is complete.  Further, Defendants' memo indicates that they have not produced communications with Authorize.net regarding this subpoena.

II.     The Subpoena Is Not Overly Broad

In the subpoena, Knoll specifically identifies the information it seeks.  Defendants claim that Knoll seeks information regarding styles that are not at issue even though <u>Defendants themselves</u> identified those style numbers in reports they prepared to show sales of <u>infringing product</u>.  Either Defendants' reports are inaccurate, in which case Knoll is entitled to review the data underlying Defendants' reports, or the challenged style numbers do identify infringing products, in which case Knoll is entitled to the production of documents showing the sales of infringing products.

III.    The New York Protective Order Adequately Protects Any Legitimate Privacy Interests

The court in the New York Litigation has entered a protective order[6], and, if appropriate, Authorize.net may produce documents pursuant to that protective order—as Defendants concede, the protective order in the New York Litigation expressly provides that non-parties, such as Authorize.net, can avail themselves of its protections.

---

[6]A copy of the protective order is attached as Exhibit C.  The copy of the protective order attached to Defendants' papers is not signed by the New York court and does not reflect changes to the protective order made by the court.

Defendants' Memo at unnumbered page 3.  Indeed, courts have recognized that privacy concerns of both parties and non-parties are of diminished weight when the court has entered a protective order.[7]  *S.E.C. v. Galleon Mgmt, LP*, 274 F.R.D. 120, 124 (S.D.N.Y. 2011).  Thus, the privacy interests asserted by Defendants are nothing more than a red herring.[8]  Indeed, since Defendants claim that they have already "disclosed the vast majority of the sales made by Defendants of the relevant furniture at issue in the New York case", Memo at unnumbered page 7, (but not the records underlying those sales), what possible privacy interest could they have in the documents Knoll seeks from Authorize.net?

     Defendants' argument regarding communications between Defendants and Authorize.net relating to the New York Litigation and the sales of infringing products is similarly unavailing.  Communications between Defendants and Authorize.net are not subject to the attorney client privilege or the "common interest" or "joint defense" rule. "A shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception.  Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012).  There is no evidence before the court establishing that Defendants and Authorize.net sought to develop a joint defense to the subpoena.  No declaration from Authorize.net or Defendants' counsel was submitted to support the motion, and Mr. Saxena's declaration makes no reference to any efforts to develop a joint defense.

---

[7]If documents are produced pursuant to a protective order, there is no basis for redacting them.

[8]Knoll is not seeking Defendants' banking records or personnel records.

**IV.     Defendants Do Not Have Standing to Quash the Subpoena.**

As Defendants concede, a party does not have standing to quash a subpoena issued to a third party.  *See* Memo at unnumbered page 3.  Defendants claim that they have a privacy interest in the documents sought by Knoll, but this claim is undercut by their admission that they have "disclosed the vast majority of the sales made by Defendants of the relevant furniture at issue in the New York case", (Memo at unnumbered page 7), and the absence of any "joint defense" agreement.  Likewise, Defendants point to no case finding a party has standing to quash a subpoena based on the alleged privacy interests of third parties.  *See Malibu Media, LLC v. Doe*, 2012 U.S. Dist. Lexis 84948 (S.D. Cal. June 19, 2012) (finding Doe defendants had standing to move to quash subpoenas to their ISPs seeking the Doe defendants' contact information); *S.E.C. v. Galleon Mgmt, LP*, 274 F.R.D. 120, 124 (S.D.N.Y. 2011) (involving motion to compel, not motion to quash subpoena); *Gottlieb v. Wiles*, 143 F.R.D. 235 (D. Colo. 1992)[9] (involving motion to compel, not motion to quash subpoena).  Thus, Defendants have no standing to move to quash the subpoena served on Authorize.net.

---

[9] Defendants incorrectly represent to the court that this case involved a subpoena.  *See* Defendants' Memo at 6.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to quash the subpoena served on Authorize.net should be denied in its entirety, and Authorize.net should be ordered to comply with the subpoena, invoking the protections of the New York Protective Order where appropriate.

DATED this 10th day of September, 2012

FILLMORE SPENCER, LLC


 /s/ Matthew  R. Howell
Matthew R. Howell
3301 North University Avenue
Provo, Utah  84604

Attorneys for Knoll, Inc.

**CERTIFICATE OF SERVICE**

I certify that I caused a true and correct copy of the foregoing KNOLL, INC.'S MEMORANDUM IN OPPOSITION TO MOVANT'S MOTION TO QUASH to be filed with the Court and served electronically this 10th day of September, 2012, to each of the following:

>Wesley M. Lang
>Alan J. Howarth
>Clayton, Howarth & Cannon, P.C.
>P.O. Box 1909
>Sandy, Utah  84091-1909

                                              /s/ Matthew R. Howell